# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH PAPPALARDO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-14-177-R |
| ) | |
| THE GEO GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant The GEO Group, Inc.'s Motion to Dismiss. Doc. No. 6. This motion was filed while this case was pending before the United States District Court for the Southern District of Florida. After this case was transferred to this Court pursuant to 28 U.S.C. § 1404(a), Defendant requested leave to file a supplement to its Motion to Dismiss, and the Court granted this request. The parties have now fully briefed both the original motion, as well as Defendant's supplement. For the following reasons, Defendant's motion is GRANTED, and Plaintiff's case is DISMISSED.

## Background

According to Plaintiff, the following scenario occurred: In December 2010, Plaintiff Joseph Pappalardo began using a telephone dating service, MegaMates, in order to find a homosexual male friend. At this time, Plaintiff believed that his mother and sister were unaware that he was homosexual. Through MegaMates, Plaintiff had conversations with several people that used false names. And during these phone

conversations, Plaintiff revealed to these people that his family was unaware of his sexual orientation.

In February 2011, one of Plaintiff's connections through MegaMates requested that Plaintiff send him money due to financial needs. At this request, Plaintiff sent the requested money through the use of a "Green Dot" card. Subsequently, this same stranger requested that Plaintiff send more money, but Plaintiff refused. Upon this refusal, the stranger told Plaintiff that if he did not receive the money, he would inform Plaintiff's family of Plaintiff's sexual orientation. At this threat, Plaintiff sent more funds.

Over the next several months, this same stranger, along with others, induced Plaintiff to send them approximately $700,000. They accomplished this by threats of exposing Plaintiff's sexual orientation to his family, threats of physically beating Plaintiff, including killing him, and threats towards Plaintiff's family, including kidnapping his two nieces. Plaintiff sent this exorbitant amount of money primarily through the use of "Green Dot" cards, and the funds came from several of Plaintiff's financial accounts.

Although he did not know it at the time, the strangers that extorted Plaintiff's funds were all inmates in a prison that Defendant The GEO Group, Inc. runs in Lawton, Oklahoma, pursuant to a contract it has with the state government. Oklahoma Department of Corrections regulations do not permit inmates to possess cell phones, and it is Defendant's employees' responsibility to ensure that cell phones are not brought into the Lawton prison facility. Yet the inmates that were in contact with Plaintiff through MegaMates were able to do so using prepaid cell phones in violation of Oklahoma law.

Because of this, Plaintiff, a citizen of Connecticut, sued Defendant, a Florida corporation, for both negligence and aiding and abetting the prisoners' actions. Plaintiff originally filed suit in the West Palm Beach Division of the United States District Court for the Southern District of Florida. Although venue was appropriate in Florida, Plaintiff's case was transferred to this Court pursuant to 28 U.S.C. § 1404(a). Now before the Court are Defendant's Motion to Dismiss and Defendant's supplement to this motion.

## **Standard of Review**

To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). To state a plausible claim, the plaintiff bears the burden of framing a complaint containing enough factual matter, which when taken as true, suggests that he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In other words, on motion to dismiss, the Court is to decide "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). And all well-pleaded factual allegations must be accepted as true. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998) (citation omitted). Furthermore,

those allegations, and all reasonable inferences therefrom, must be construed in the light most favorable to the non-moving party. *Id.* at 1203 (citation omitted).

## **Application**

It is well established that "where a case is transferred from one forum to another under 28 U.S.C. § 1404(a), as here, then the transferee court must follow the choice of law rules of the transferor court." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964)). Therefore, the Court begins by using Florida's choice of law rules in order to determine which state's laws should apply to this case.

## **1. Choice of Law**

"In tort cases, Florida applies the 'significant relationship' test delineated in § 145 of the Restatement (Second) of Conflict of Laws." *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F.Supp.2d 1198, 1218 (S.D. Fla. 2008) (citation omitted). That is, under Florida law, "in tort actions involving more than one state, all substantive issues should be determined in accordance with the law of the state having the most 'significant relationship' to the occurrence and parties." *Merkle v. Robinson*, 737 So.2d 540, 542 (Fla. 1999) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980)).

Analysis under Florida's significant relationship test first requires the Court to identify the particular sovereigns that have an interest in applying their laws to the case. *Pycsa Panama*, 625 F.Supp.2d at 1218 (citation omitted). Next, if a "true conflict" exists, the Court must conduct a comprehensive conflict-of-law analysis. *Id.* at 1219 (citation omitted). A "true conflict" is a situation where "two or more states have a legitimate

4

interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result." *Id.* (quotation omitted) (internal quotation marks omitted). If a "true conflict" exists in the case, then the Court must conduct "a two-pronged inquiry directed towards review of the factors listed in §§ 145 and 6 of the Restatement (Second) of Conflict of Laws." *Id.* (citation omitted).

Under § 145, contacts to be considered in applying the choice of law principles of § 6 include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." And under § 6, the competing policy considerations include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

In applying this test, the Court is not to simply look for the sovereign with the most contacts, but instead the Court is to find the sovereign that has the most significant contacts. *Pycsa Panama*, 625 F.Supp.2d at 1219 (citation omitted). While the state where the injury occurred is the decisive consideration in choosing which state's laws apply in many situations, "it is equally true that 'the state where the injury occurred may have little actual significance for the cause of action,' and that '[o]ther factors may combine to

5

outweigh the place of injury as a controlling consideration.'" *Id.* at 1219-20 (quoting *Bishop*, 389 So.2d at 1001).

To begin, three different states have an interest in this dispute: Oklahoma, Connecticut, and Florida. Additionally, a "true conflict" exists in this case—Defendant asserts it is entitled to heightened protection under the Oklahoma Governmental Tort Claims Act, while no such protection would exist under the laws of either Connecticut or Florida.

In terms of the three sovereigns' interests in this dispute, Connecticut possesses an interest because it is the place where the injury allegedly occurred. Plaintiff resides in Connecticut and allegedly depleted his savings there at the threats of the Oklahoma inmates. It is undisputed that Connecticut has an interest in protecting its citizens from tortious conduct. Moreover, Florida has an interest in this dispute because it is the place where Defendant is incorporated and has its principal place of business. Florida no doubt has an interest in determining whether a corporation organized under its laws should be liable for its employees' actions in a given situation.

Notwithstanding that Connecticut and Florida both have an interest in this case, Oklahoma has a much more significant relationship to the dispute. Oklahoma is the place where Plaintiff alleges the conduct causing the injury occurred.[1] According to Plaintiff's Complaint, several inmates in an Oklahoma prison were able to possess and use cell

---

[1] Plaintiff argues in his initial response brief that it cannot yet be determined where Defendant's alleged negligence occurred, but this directly contradicts Plaintiff's assertions in his Complaint that the inmates in the Lawton, Oklahoma prison facility that called him on illegal cell phones did so "within the view and/or hearing of GEO staff members." Doc. No. 1, at 6. This is the entire basis for Plaintiff's claim in this case, as Plaintiff argues that Defendant's employees owed certain duties to the public, but breached those duties by allowing inmates access to and the use of illegal cell phones while in the Lawton prison facility. Thus, it is quite clear that any unlawful conduct occurred in Oklahoma.

phones while in prison, in violation of Oklahoma law, and these inmates were capable of doing so while certain of Oklahoma's residents—Defendant's employees—stood idly by and allowed it to happen. It cannot be disputed that Oklahoma has a strong interest in punishing its residents for their tortious conduct. Furthermore, Oklahoma has a strong interest in ensuring that its prison facilities are being operated in accordance with its laws and regulations. This is especially true where, as here, the prison facility is being run by a private corporation pursuant to a contract it has with the state.

Therefore, the Court finds that this is the type of situation where many factors combine to outweigh the place of injury as a controlling consideration, rendering Oklahoma law applicable to this case. In fact, Oklahoma's interest in this dispute is so strong that Judge Ryskamp, who transferred this case to this Court from the Southern District of Florida, even felt the need to mention in his show cause order that "Oklahoma law governs Plaintiff's negligence claim under Florida's conflict-of-laws analysis" because the case involves Oklahoma corrections facilities, Oklahoma inmates, and Oklahoma residents. Doc. No. 24, at 2 n.1.

## 2. Oklahoma Governmental Tort Claims Act

Having determined that Oklahoma law applies to this case, the Court turns to Defendant's argument that the Oklahoma Governmental Tort Claims Act (OGTCA) bars this suit. Concerning this, Defendant argues that the OGTCA is a statute of limitations under Oklahoma law, which applies in this case because statutes of limitations are subject to Florida's "significant relationship" test, and Oklahoma has the most significant relationship to this litigation. By contrast, Plaintiff argues that the OGTCA is procedural,

meaning it is inapplicable in this case because procedural matters are governed by Florida law under Florida's choice of law rules.

Contrary to both parties' arguments, the OGTCA is a jurisdictional limitation period, as opposed to a statute of limitations. A jurisdictional limitation period is defined under Oklahoma law as "a prescribed time period that is so specifically attached to the subject of the claim that it must be construed as an element of the claim." *Sisk v. J.B. Hunt Transp., Inc.*, 81 P.3d 55, 62 & n.1 (Okla. 2003) (Boudreau, J., and Summers, J., concurring in part and dissenting in part) (citing *Cruse v. Bd. of Cnty. Comm'rs of Atoka Cnty.*, 910 P.2d 998, 1004 n.32 (Okla. 1995)). Therefore, the Court finds that the OGTCA is part of Oklahoma's substantive tort law. *See Panichas v. Bullock*, No. CIV-12-1222-W, 2014 WL 584751, at *6 (W.D. Okla. Feb. 12, 2014) (referring to the OGTCA as being part of Oklahoma's substantive law). And as the Court has previously found that Oklahoma's substantive law applies to this case, it follows that the OGTCA is applicable to this case.

> Under Okla. Stat. tit. 57, § 566.4(B)(2):
>
> No tort action or civil claim may be filed against any employee, agent, or servant of the state, the Department of Corrections, private correctional company, or any county jail or any city jail alleging acts related to the duties of the employee, agent or servant, until all of the notice provisions of the Governmental Tort Claims Act have been fully complied with by the claimant. This requirement shall apply to any claim against an employee of the state, the Department of Corrections, or any county jail or city jail in either their official or individual capacity, and to any claim against a private correctional contractor and its employees for actions taken pursuant to or in connection with a governmental contract.

This provision makes the OGTCA's notice requirements applicable to any suit against a private correctional company for its actions taken in connection with a governmental contract. *Smith v. Avalon Corr. Servs., Inc.*, No. 13-CV-0676-CVE-TLW, 2014 WL 693445, at *3 (N.D. Okla. Feb. 21, 2014). Accordingly, the OGTCA's notice requirements are applicable to the present suit.[2]

Okla. Stat. tit. 51, § 156(B) provides that notice of a claim against the state or a political subdivision must be presented "within one (1) year of the date the loss occurs." And if notice is not presented within one year after the loss occurs, the claim is forever barred. *Id.* Plaintiff argues that this notice requirement cannot apply in this situation, because the statute does not provide where notice is to be given when the plaintiff's claim is against a private correctional company. Regarding this, the statute specifies in § 156(C) and (D) where notice is to be given depending upon whether the claim is against the state or its political subdivision. However, neither "state" nor "political subdivision," as defined in § 152, includes a private correctional company. Therefore, Plaintiff argues that he was not required to give notice under § 156 whatsoever. This cannot be true, though, because as the Court previously found, Okla. Stat. tit. 57, § 566.4(B)(2) makes the notice requirements of the OGTCA applicable to Plaintiff's claim.

Alternatively, Plaintiff argues that to the extent he was required to comply with the notice requirement in § 156, he met the requirement through his attorney's letter to

---

[2] Contrary to what Plaintiff contends, the OGTCA's notice requirements are applicable to a suit against a private correctional company whether the plaintiff is a prisoner or a private citizen. *See Smith*, 2014 WL 693445, at *3 (applying § 566.4(B)(2) to a suit brought by a private citizen). And further, the applicability of the OGTCA's notice requirements is not limited to actions originally filed in Oklahoma. *See Panichas*, 2014 WL 584751, at *2-6 (applying the notice requirements to a suit originally filed in California but transferred to Oklahoma).

Defendant, dated July 3, 2013, which informed Defendant of the impending suit and asked whether a resolution was possible prior to the case being filed. Even assuming Plaintiff was only required to give notice of his claim to Defendant under § 156, though, the Court finds that this notice was untimely, meaning Plaintiff's suit is barred by the OGTCA. The notice requirement in § 156 states that notice must be presented within one year of the date the loss occurs. Plaintiff's Complaint indicates that his losses occurred over a period between February 2011 and November 2011. Thus, Plaintiff was required to give notice of his claim by November 2012, at the latest. Plaintiff's attorney's letter to Defendant concerning the impending litigation is dated July 3, 2013—approximately eight months too late. As a result, Plaintiff's suit is barred by the OGTCA.

Plaintiff argues that even if the notice requirement in § 156 applies to this case, and even if he failed to comply with this notice requirement, the Court should toll the one-year window he had to effect notice under § 156. Plaintiff argues that tolling is appropriate because he could not have had actual or constructive knowledge of the OGTCA's application to this case, meaning the discovery rule recognized by Oklahoma courts should apply to toll his one-year window. But the discovery rule to which Plaintiff alludes only applies to toll the one-year period under the OGTCA in situations where the government has "actively concealed facts giving rise to a plaintiff's claim." *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1190 (Okla. 2011) (citing *Tice v. Pennington, M.D.*, 30 P.3d 1164 (Okla. Civ. App. 2001)). Here, no allegations exist to support that Defendant did anything—much less actively concealed any of the facts upon which Plaintiff's claim is based—to prevent Plaintiff from discovering the facts giving rise to

his claim. Additionally, in order for the discovery rule to apply in this situation, Plaintiff "must not only show that he did not know facts constituting a cause of action, but that he exercised reasonable diligence to ascertain such facts." *Funnel v. Jones*, 737 P.2d 105, 107 (Okla. 1985) (quotation omitted). Plaintiff has simply not asserted anything indicating to the Court that he exercised reasonable diligence in ascertaining the factual basis for his claim. Therefore, the Court concludes that the discovery rule should not toll the one-year notice period under the OGTCA in this situation.

The overarching theme to Plaintiff's brief is the lack of fairness associated with applying the OGTCA to bar his suit, but this is unavailing. It is well known that under Oklahoma law, the OGTCA "is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009) (citations omitted). The Oklahoma legislature adopted the doctrine of sovereign immunity in the OGTCA, and the state has only waived this immunity to the extent and in the manner provided by the OGTCA. *See* Okla. Stat. tit. 51, § 152.1. Consequently, the state has determined that its waiver of sovereign immunity will not extend to those suits where the plaintiff has failed to comply with any of the provisions of the OGTCA, including its notice requirements. Plaintiff would have had to deal with this fact even had his suit remained in the Southern District of Florida. *See* Doc. No. 24, at 2 n.1 (noting that Oklahoma law applies to Plaintiff's case under Florida's choice of law rules). Plaintiff failed to comply with the notice requirements of the OGTCA, and thus the state's decision not to waive sovereign immunity in this situation controls.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. As Plaintiff's case is barred by the OGTCA, the Court will not pass on the remaining issues in the parties' briefs. Plaintiff's case is DISMISSED.[3]

IT IS SO ORDERED this 1st day of July, 2014.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[3] Because of this, Plaintiff's Motion to Compel, Doc. No. 27, is DENIED AS MOOT.